IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPHERIX INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-393 (SLR) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Adam Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

August 5, 2014

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ..................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS ....................................................................................................... 4

ARGUMENT ............................................................................................................................ 7

  I.  The Pleading Standard Under Federal Rule Of Civil Procedure 8(a)(2). .............. 7

  II.  Plaintiffs' Amended Complaint Fails To Allege Sufficient Facts Supporting Willful Infringement Claims For Eight Of The Patents-In-Suit. ............................ 8

  III.  Plaintiffs' Amended Complaint Fails To Allege Sufficient Facts Supporting The Willful Infringement Claim For The '323 Patent. ............................................... 12

  IV.  Plaintiffs' Amended Complaint Alleges Indirect Infringement Of The '848 Patent In Violation Of The Stipulation Ordered By The Court. .................................... 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...............................................................................................7, 8

*Baraka v. McGreevey*,
 481 F.3d 187 (3d Cir. 2007) ......................................................................................8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...............................................................................................7, 8

*Eon Corp. IP Holdings LLC v. FLO TV Inc.*,
 802 F. Supp. 2d 527 (D. Del. 2011) ...............................................................3, 9, 10

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
 897 F.2d 508 (Fed. Cir. 1990) ....................................................................................8

*In re Burlington Coat Factory Secs. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) .....................................................................................8

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007) ..................................................................................8

*LG Display Co., Ltd. v. AU Optronics Corp.*,
 722 F. Supp. 2d 466 (D. Del. 2010). ..................................................................11, 12

*Robocast, Inc. v. Apple Inc.*,
 Civ. Action No. 11-235-RGA, 2014 WL 1622002 (D. Del. Apr. 22, 2014)............13

*Sealant Sys. Intern., Inc. v. TEK Global*,
 Nos. C 11-00774 PST, 11-1649 PSG, 2012 WL 13662 (N.D. Cal. Jan. 4, 2012)....13

*SoftView LLC v. Apple Inc.*,
 Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ............. 10, 11, 12

*State Indus., Inc. v. A.O. Smith Corp.*,
 751 F.2d 1226 (Fed. Cir. 1985) ...........................................................................3, 13

**Statutes**

35 U.S.C. § 271....................................................................................................................5

35 U.S.C. § 271(a) .....................................................................................................4, 5, 14

35 U.S.C. § 271(b) ....................................................................................................... passim

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

35 U.S.C. § 271(c) ................................................................. 2, 4, 5, 14

35 U.S.C. § 284 ........................................................................... 6

35 U.S.C. § 285 ........................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................... 2, 5, 15

Fed. R. Civ. P. 15(a)(1)(B) ........................................................ 14

Fed. R. Civ. P. 8(a)(2) ............................................................... 7

Fed. R. Civ. P. 8, 11(b) ............................................................. 8

Plaintiffs' amended complaint is Spherix's third defective attempt to file a legally sufficient complaint against Cisco.  Four days before it filed the original patent infringement complaint in this action, Spherix filed and then voluntarily dismissed a virtually identical complaint (involving the same patents and parties) in this Court.  After Spherix filed its original complaint in this action, Cisco moved to dismiss that complaint because the pleading did not contain adequate allegations supporting Spherix's indirect, direct, and willful infringement claims against Cisco.  Rather than respond to Cisco's motion, Spherix instead stipulated that it would file an amended pleading that would at minimum remove all indirect infringement claims—its third complaint against Cisco and the subject of this motion.  Because Plaintiffs' amended pleading continues to assert willful infringement claims against Cisco that lack adequate supporting allegations, and asserts an indirect infringement claim contrary to the court-ordered stipulation of the parties, Cisco moves to dismiss these claims from Plaintiffs' amended complaint.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Spherix Incorporated ("Spherix") commenced this action on March 28, 2014 alleging that defendant Cisco Systems, Inc. ("Cisco") infringes eleven U.S. patents: U.S. Patent Nos. RE40467 ("the RE467 patent"); 6,697,325 ("the '325 patent"); 6,578,086 ("the '086 patent"); 6,222,848 ("the '848 patent"); 6,130,877 ("the '877 patent"); 5,970,125 ("the '125 patent"); 6,807,174 ("the '174 patent"); 7,397,763 ("the '763 patent"); 7,664,123 ("the '123 patent"); 7,385,998 ("the '998 patent"); and 8,607,323 ("the '323 patent") (collectively the "patents-in-suit").[1]  D.I. 1.  On June 9, 2014, Cisco moved to dismiss several of the direct,

---

[1]      A nearly identical complaint with the same patents and parties was filed in this Court on March 24, 2014—four days earlier than the complaint in the instant action.  C.A. No. 14-374, D.I. 1.  Spherix voluntarily dismissed that complaint on April 10, 2014.  C.A. No. 14-374, D.I. 7.

indirect, and willful infringement claims in the original complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  D.I. 11.

On June 24, 2014, Spherix and Cisco stipulated that (1) Cisco's motion to dismiss the original complaint would be withdrawn without prejudice; (2) Spherix would file an amended complaint addressing the deficiencies in its prior complaint on or before July 8, 2014 (the "Amended Complaint"); and (3) Cisco would have until August 5, 2014 to answer, move, or otherwise respond to the Amended Complaint.  D.I. 14.  Because Spherix does not have facts showing that Cisco had the requisite knowledge of the asserted patents or intent to support allegations of indirect infringement, the parties' stipulation also provided that the Amended Complaint would "not includ[e] claims of indirect infringement under 35 U.S.C. § 271(b) or (c)." D.I. 14 at 1.  The Court entered the parties' stipulation as an order on June 27, 2014, and Spherix—along with its wholly-owned subsidiary NNPT, LLC ("NNPT") (collectively "Plaintiffs")—filed the Amended Complaint on July 8, 2014.  D.I. 15.  Plaintiffs' Amended Complaint, however, still fails to meet the requirements for pleading willful infringement set forth by the Federal Circuit and this Court, and Plaintiffs' indirect infringement allegations are inconsistent with the parties' stipulation.  Accordingly, Cisco once again moves to dismiss pursuant to Rule 12(b)(6).

## SUMMARY OF THE ARGUMENT

1.      This motion raises two independent deficiencies with Plaintiffs' Amended Complaint:  Plaintiffs' allegations regarding (1) willful infringement; and (2) indirect infringement.

2.      Although Plaintiffs allege that Cisco has willfully infringed every single one of the eleven patents-in-suit, Plaintiffs fail to plead sufficient facts supporting their claim that Cisco willfully infringes eight of those patents.  For these eight patents, Plaintiffs' Amended Complaint

does not allege that Spherix, NNPT, or anyone else put Cisco on notice of any of the patents-in-suit; that Cisco identified, analyzed, or reviewed any of them; or even that Cisco was otherwise aware that the patents existed, let alone that they allegedly apply to Cisco's products. Rather, the sum total of Plaintiffs' willfulness allegations in the Amended Complaint for eight of the patents is that Cisco gained general knowledge of the patents through its alleged participation in a bankruptcy auction of a 6,000 patent and patent application portfolio—the Nortel Networks portfolio—which happened to include the eight patents at issue. These allegations are insufficient as a matter of law to support Plaintiffs' willful infringement claims. As this Court has recognized, a party's receipt of even a much shorter list of patents is "too tenuous to sustain an allegation of knowledge." *Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 532-33 (D. Del. 2011). Indeed, Plaintiffs' allegations make no distinction between Cisco's knowledge of the eight patents at issue and the rest of the 6,000 patents and patent applications involved in the bankruptcy auction, revealing that Plaintiffs have ***no facts*** showing that Cisco has the requisite knowledge or specific intent to willfully infringe any one of those patents. Because Plaintiffs' claims for willful infringement of these eight patents are legally insufficient, they should be dismissed.

3.      The claim of willful infringement for the '323 patent should be dismissed for an additional, independent reason: the sole basis that Plaintiffs offer for alleging that Cisco willfully infringed that patent is Cisco's alleged participation in the Nortel bankruptcy auction, ***but the '323 patent did not even exist at that time***. The Nortel patent sale occurred in 2011, but the '323 patent did not issue until December 2013. As longstanding Federal Circuit precedent establishes, "[t]o willfully infringe *a patent*, ***the patent must exist*** and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (second emphasis added).

This is a matter of common sense—Cisco could not possibly have had knowledge of a patent, let alone its alleged infringement of a patent, that was not in existence when Cisco allegedly participated in the Nortel bankruptcy auction.  To the extent that Plaintiffs intend to suggest that somehow Cisco had knowledge of the '323 patent's application, the Federal Circuit has made clear that is not sufficient to support a willful infringement claim.  Plaintiffs' claim for willful infringement of the '323 patent should be dismissed for this additional reason also.

4.     Plaintiffs' claim for induced infringement of the '848 patent should also be dismissed for violating the stipulation agreed to by the parties and ordered by the Court.  Before the parties entered into their stipulation, Cisco challenged the sufficiency of Spherix's allegations regarding indirect infringement in its first motion to dismiss because they were supported by no facts.  *See* D.I. 12.  In response, to resolve that aspect of Cisco's motion to dismiss, Spherix agreed to remove any indirect infringement allegations from its complaint.  This agreement was memorialized in a stipulation, subsequently entered by the Court, which specifically stated that the Amended Complaint would "not includ[e] claims of indirect infringement under 35 U.S.C. § 271(b) or (c)."  D.I. 14 at 1.  Despite this unambiguous agreement, Plaintiffs' Amended Complaint alleges that "Cisco is liable for infringement of the '848 patent pursuant to 35 U.S.C. § 271 (a) *and (b)*," D.I. 15 ¶ 46 (emphasis added), contrary to this Court's order on the parties' stipulation.  As a result, Plaintiffs' claim of induced infringement as to the '848 patent should also be dismissed.

## STATEMENT OF FACTS

In its original complaint, Spherix alleged that Cisco infringes eleven U.S. Patents that Spherix claims to have acquired from Rockstar Consortium (US) LP within the last several months.  Spherix's complaint was unclear, however, about what type of infringement was alleged.  For ten of the patents-in-suit, Spherix alleged that Cisco was liable "pursuant to *at least*

35 U.S.C. § 271 (a)," leaving open the possibility that Spherix was also alleging infringement under other subsections of Section 271, such as induced and contributory infringement claims under 35 U.S.C. § 271(b) and 271(c).  *See, e.g.*, D.I. 1 ¶ 29.  For one of the eleven patents, the '763 patent, Spherix's allegations were even more deficient: for that patent, Spherix alleged only that Cisco was liable "pursuant to *at least* 35 U.S.C. § 271 *et seq*," without identifying any particular subsection of 35 U.S.C. § 271 that Spherix alleged Cisco violated.  *See* D.I. 1 ¶ 59 (emphases added).  Spherix also alleged that Cisco willfully infringed each and every one of the patents-in-suit, but for eight of the patents, Spherix provided no facts supporting those allegations.  Due to these insufficient allegations, Cisco moved to dismiss Spherix's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *See* D.I. 11.

Rather than respond to Cisco's motion to dismiss, Spherix instead agreed to enter into a stipulation with Cisco specifying that Spherix would file an Amended Complaint on or before July 8, 2014, asserting claims for direct infringement of the eleven patents-in-suit under 35 U.S.C. § 271(a), "but not including claims of indirect infringement under 35 U.S.C. § 271(b) or (c)."  D.I. 14 at 1.  The stipulation further provided that Cisco's motion to dismiss the original complaint would be withdrawn without prejudice, and that Cisco would have until August 5, 2014 to answer, move, or otherwise respond to the Amended Complaint.  *Id.*

Plaintiffs have now filed their Amended Complaint, alleging not just direct infringement, but continuing to allege willful infringement of all eleven patents-in-suit, and indirect infringement (induced infringement) of one of them.[2]  D.I. 15.  With respect to Plaintiffs' willful

---

[2]     The Amended Complaint added NNPT, LLC as a Plaintiff.  According to the Amended Complaint, Spherix transferred five of the patents-in-suit to NNPT, which is a wholly-owned subsidiary of Spherix.  D.I. 15 ¶¶ 9, 20, 21.

infringement claims, Plaintiffs' Amended Complaint alleges that Cisco had pre-suit knowledge

of eight of the patents-in-suit—the RE467, '877, '125, '174, '763, '123, '998, and '323 patents—

based solely on Cisco's alleged participation in the bankruptcy auction for Nortel's patent

portfolio, which occurred in 2011.   In the Background section of the Amended Complaint,

Plaintiffs allege that Cisco generally participated in the Nortel patent auction and unsuccessfully

bid for Nortel's portfolio:

> 8.      During bankruptcy proceedings many years later, Nortel sold the Asserted
> Patents, among others, to a consortium of technology companies known as
> Rockstar Bidco, L.P. On information and belief, Defendant Cisco participated in
> the auction during which Rockstar Bidco, L.P. purchased the Asserted Patents
> from Nortel.

> 17.      Nortel entered bankruptcy protection in 2009. As part of the bankruptcy,
> Nortel sold a portion of its patent assets for an unprecedented and widely-
> publicized $4.5 billion — which was $1.3 billion more than the combined value
> of all of Nortel's business units that were sold prior to the patent auction. The
> purchasers were a consortium of leading technology companies collectively
> known as Rockstar Bidco, LP. Among the assets sold to Rockstar Bidco, LP were
> the Asserted Patents. On information and belief, Cisco also participated in the
> auction of the Nortel patent assets and bid on the Asserted Patents, albeit
> unsuccessfully.

D.I. 15   ¶¶ 8, 17.   Then, for each of those eight patents-in-suit, Plaintiffs allege pre-suit

knowledge of the patent based solely on Cisco's general participation in the Nortel patent

auction:

> Upon information and belief, Cisco has had knowledge of the [patent-in-suit] and
> its relevance to Cisco's products and services, including Cisco's infringement
> thereof, since at least the Nortel patent auction.

> There is an objectively high likelihood that Cisco's actions constituted
> infringement of a valid patent, and the likelihood was either known or so obvious
> that it should have been known by Cisco. Thus, given Cisco's knowledge of the
> [patent-in-suit], stemming at least from the date of the Nortel patent auction,
> Cisco is engaging in willful infringement of the [patent-in-suit], and is therefore
> liable for enhanced damages under 35 U.S.C. § 284 and for attorneys' fees and
> costs incurred in prosecuting this action under 35 U.S.C. § 285.

D.I. 15 ¶¶ 33, 34, 55, 56, 60, 61, 65, 66, 70, 71, 75, 76, 80, 81, 85, 86.   Nowhere do Plaintiffs allege any facts beyond Cisco's mere "participation" in the auction in support of their willful infringement claims for these eight patents.   There are no allegations, for example, that Cisco (1) identified, reviewed, or analyzed any particular patents out of the portfolio; (2) attempted to assess whether any particular patent had any application to its products; or (3) even knew that the eight patents were among the 6,000 patents and patent applications in the portfolio. *See id.*

With respect to indirect infringement, contrary to this Court's order on the parties' stipulation that Spherix would not include any allegations of indirect infringement in its amended complaint, Plaintiffs' Amended Complaint also includes allegations that Cisco induces infringement under 35 U.S.C. § 271(b) for one of the patents, the '848 patent.   D.I. 14 at 1; D.I. 15 ¶ 46.

## ARGUMENT

## I.   THE PLEADING STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(A)(2).

Rule 8(a)(2) requires that a complaint contain "'a short and plain statement of the claims showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).   The courts evaluate the sufficiency of allegations in a complaint at the outset of the litigation because "basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."   *Id.* at 558 (alteration in original) (internal quotation marks omitted).

Rule 8(a)(2) "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   Accordingly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action' will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Nor will a complaint that tenders merely "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubted in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  The court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).  The court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citation omitted).

## II.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS SUPPORTING WILLFUL INFRINGEMENT CLAIMS FOR EIGHT OF THE PATENTS-IN-SUIT.

Plaintiffs' willful infringement claims do not meet the pleading standards required by the Federal Circuit or this Court.  "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (citation omitted).  Specifically, knowledge of the patent-in-suit is a prerequisite to a willful infringement finding.  *See, e.g.*, *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge.").  Furthermore, "when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement." *Seagate*, 497 F.3d at 1374 (citing Fed. R. Civ. P. 8, 11(b)).

For eight of the eleven patents-in-suit—the RE467, '877, '125, '174, '763, '123, '998, and '323 patents (hereinafter the "Willfulness Patents-In-Suit")—Plaintiffs' claims of willful infringement are based solely on Cisco's alleged participation in the bankruptcy auction for Nortel's patents that occurred in 2011.  In the Background section of the Amended Complaint, Plaintiffs allege that Cisco generally participated in the Nortel patent auction and unsuccessfully bid for Nortel's portfolio:

> 17.    Nortel entered bankruptcy protection in 2009. As part of the bankruptcy, Nortel sold a portion of its patent assets for an unprecedented and widely-publicized $4.5 billion — which was $1.3 billion more than the combined value of all of Nortel's business units that were sold prior to the patent auction. The purchasers were a consortium of leading technology companies collectively known as Rockstar Bidco, LP. Among the assets sold to Rockstar Bidco, LP were the Asserted Patents. On information and belief, Cisco also participated in the auction of the Nortel patent assets and bid on the Asserted Patents, albeit unsuccessfully.

D.I. 15 ¶ 17; *see also* D.I. 15 ¶ 8.  Then, for each of the Willfulness Patents-In-Suit, Plaintiffs allege pre-suit knowledge of the patent based solely on Cisco's alleged participation in the Nortel patent auction.  *See* D.I. 15 ¶¶ 33, 34, 55, 56, 60, 61, 65, 66, 70, 71, 75, 76, 80, 81, 85, 86.

The Willfulness Patents-In-Suit are eight of over 6,000 patents and patent applications that Plaintiffs allege were part of the Nortel patent portfolio auction.  *See* D.I. 15 ¶ 14 (stating that Nortel had "well over 6,000 active patents and patent applications . . . as of July 2011").  These allegations are not sufficient to support Plaintiffs' claims that Cisco willfully infringes these eight patents.

As this Court has previously explained, inclusion of a patent-in-suit in a lengthy list of patents does not impart knowledge of the patent-in-suit sufficient to support a claim for willful infringement against the recipient.  For example, in *Eon Corp. IP Holdings v. FLO TV*, the defendants had previously entered into a separate license agreement with a third party, where two of the patents that were licensed as part of that third-party agreement cited the patent-in-suit

as prior art.  Based on those facts, the plaintiff alleged that defendants had knowledge of the patent-in-suit because it was cited as prior art by the two licensed patents.  802 F. Supp. 2d at 532-33.  In determining whether such allegations were sufficient to allege knowledge of the patent-in-suit, the *Eon Corp.* court found that the patent-in-suit was just one of fourteen prior art references cited in one of the licensed patents, and one of ninety-eight prior art references cited in the other.  *Id.* at 533.  As a result, this Court held that the link between the defendants and the patent-in-suit was "too tenuous to sustain an allegation of knowledge." *Id.*

Here, the link between Cisco and the Willfulness Patents-In-Suit is even more tenuous than in *Eon Corp.*  As in *Eon Corp.*, there are no allegations here that Cisco (1) identified, reviewed, or analyzed any of the Willfulness Patents-In-Suit; (2) attempted to assess whether the Willfulness Patents-In-Suit had any application to Cisco's products; or (3) was even aware that the Willfulness Patents-In-Suit were among the over 6,000 patents and patent applications in the Nortel portfolio.  Moreover, from a mathematical standpoint, the eight Willfulness Patents-In-Suit represent at most 0.13% of the Nortel portfolio sold at auction (assuming only 6,000 patent assets, rather than "well over 6,000" patent assets as the Amended Complaint alleges).  This is far less than the 7.14% (1 of 14) and 1.02% (1 of 98) found in *Eon Corp.* to be too tenuous to sustain knowledge of the patent-in-suit.  *See id.*

Other cases from this Court likewise make clear that Plaintiffs' allegations are insufficient.  In *SoftView v. Apple Inc.*, the plaintiff alleged that Kyocera, which had been added to the case as a defendant, had gained knowledge of the patent-in-suit due to numerous media reports surrounding the original litigation filed against Apple and AT&T.  *SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012).  The plaintiff contended that the media publicity surrounding the original filing of the case created a

10

reasonable inference that a sophisticated company like Kyocera—with similar business interests as Apple and AT&T—would have learned of the litigation and the patent-in-suit. *Id.* The Court disagreed, holding that it was implausible to conclude that Kyocera would have been aware of particular media reports given the "sheer number and frequency" of patent lawsuits:

> The mere fact that SoftView's lawsuit against Apple and AT & T was reported in certain media outlets does not, by itself, plausibly suggest that Kyocera would have been aware of those particular media reports, particularly given the sheer number and frequency of patent lawsuits asserted against smartphone manufacturers.

*Id.* Similarly, here, there is no reason to believe that Cisco was specifically aware of the Willfulness Patents-In-Suit given the "sheer number" of patents and patent applications that make up the Nortel patent portfolio.

As another example, in *LG Display v. AU Optronics*, the court concluded after a bench trial that the alleged infringer's participation in a patent portfolio auction containing the patents-in-suit was insufficient to establish willfulness. *LG Display Co., Ltd. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 470-71 (D. Del. 2010). This conclusion was based on the fact that the alleged infringer was not the purchaser of the portfolio containing the patents-in-suit and because it was "unclear as to the extent of [the alleged infringer]'s interest and involvement in the potential purchase." *Id.* Similarly, Plaintiffs' Amended Complaint confirms that Cisco did not purchase the Nortel patent portfolio. D.I. 15 ¶ 17. Moreover, the Amended Complaint is completely devoid of any factual allegations regarding the extent of Cisco's participation in the lengthy auction process or whether Cisco even reviewed any of the patents-in-suit. Here, as in *LG Display*, it is "unclear as to the extent of [Cisco]'s interest and involvement in the potential purchase," rendering Plaintiffs' allegations insufficient. *LG Display*, 722 F. Supp. at 470-71.

Indeed, Plaintiffs make no distinction between Cisco's alleged knowledge of the Willfulness Patents-In-Suit, and its knowledge of the remainder of the 6,000 patents and patent

applications in the Nortel portfolio.  As a result, Plaintiffs' allegations suggest that Cisco's alleged involvement in the Nortel auction provided Cisco with the knowledge required to willfully infringe each and every one of the over 6,000 patents and applications in Nortel's portfolio.  As confirmed by the authorities on this issue, that cannot suffice to allege willful infringement.  *See id.*; *Eon Corp.*, 802 F. Supp. 2d at 532-33; *SoftView*, 2012 WL 3061027, at *6.

Notably, for the remaining three patents—the '325, '086, and '848 patents—Plaintiffs allege additional facts in support of their claims that Cisco willfully infringed those patents.  *See* D.I. 15 ¶¶ 38, 43, 48-50.  For example, Plaintiffs allege that Cisco had knowledge of the '325 patent because the United States Patent and Trademark Office ("PTO") cited the '325 patent during prosecution of Cisco patents, and because Cisco cited the '325 patent as potentially relevant art to the PTO in patent applications.  D.I. 15 ¶ 38.[3]  Although Cisco strongly disagrees that these allegations do or could establish that Cisco acted willfully with respect to the '325, '086, and '848 patents, the additional allegations with respect to the three remaining patents highlight the lack of any facts showing that Cisco actually was aware of the Willfulness Patents-In-Suit, let alone had any understanding as to their alleged applicability to Cisco's products.  Accordingly, Plaintiffs' claims for willful infringement of the Willfulness Patents-In-Suit should be dismissed.

## III.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS SUPPORTING THE WILLFUL INFRINGEMENT CLAIM FOR THE '323 PATENT.

Although the reasoning above in Part II provides a sufficient basis for dismissing Plaintiffs' willful infringement claims for all of the Willfulness Patents-In-Suit, Plaintiffs' willful

---

[3]     Cisco does not admit any of these allegations, and references them only to contrast the lack of similar allegations for the Willfulness Patents-In-Suit.

infringement claim for the '323 patent is deficient for an additional, independent reason: the '323 patent did not yet exist at the time Cisco is alleged to have gained knowledge of it.  As longstanding Federal Circuit precedent establishes, "[t]o willfully infringe *a patent*, **the patent must exist** and one must have knowledge of it."  *State Industries*, 751 F.2d at 1236 (second emphasis added).  Cisco could not have knowledge of a patent before it existed.  The Nortel patent auction occurred in June and July of 2011.  *See* D.I. 15 ¶¶ 15, 17.  The '323 patent, however, did not issue until December 10, 2013, over two years after the Nortel patent auction.  *See* D.I. 15 ¶ 82.

Although the application for the '323 patent existed in the Nortel portfolio at the time, mere knowledge of a pending patent application—even if it had been alleged—is not sufficient to support a willful infringement claim, as held by the Federal Circuit.  That is because "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents."  *State Industries*, 751 F.2d at 1236.  Indeed, even if the patent eventually issues, the claim scope is not known when it is in its application stage, and, according to the Federal Circuit, "is something totally unforeseeable."  *Id.*  This is consistent with cases from both this Court and others.  *See, e.g.*, *Sealant Sys. Intern., Inc. v. TEK Global*, Nos. C 11-00774 PST, 11-1649 PSG, 2012 WL 13662, at *3 (N.D. Cal. Jan. 4, 2012) (citing *State Industries* and holding that knowledge of a patent application cannot form the basis of willful infringement absent specific knowledge of when the patent came into existence); *see also Robocast, Inc. v. Apple Inc.*, Civ. Action No. 11-235-RGA, 2014 WL 1622002, at *12 (D. Del. Apr. 22, 2014) (citing *State Industries* and holding that marketing materials marked "patent pending" cannot form the basis of willful infringement).  There is no allegation sufficient to show that Cisco was aware of this application, and even if there were such an allegation, the

patent itself did not exist and could not have been known.   Accordingly, Plaintiffs' willful infringement claims with respect to the '323 patent should be dismissed for this additional reason.

## IV. PLAINTIFFS' AMENDED COMPLAINT ALLEGES INDIRECT INFRINGEMENT OF THE '848 PATENT IN VIOLATION OF THE STIPULATION ORDERED BY THE COURT.

Plaintiffs' indirect infringement claim for the '848 patent should also be dismissed.   After Cisco moved to dismiss Spherix's original complaint, the parties entered into a stipulation specifying that Spherix would file an amended complaint.   In addition to setting deadlines for the Amended Complaint and Cisco's response to that pleading, the stipulation further specified that the Amended Complaint would include claims for direct infringement, but would not include any indirect infringement claims:

> Plaintiff Spherix Incorporated shall file an amended complaint (the "Amended Complaint") in this action asserting claims for direct infringement of the eleven patents-in-suit under 35 U.S.C. § 271 (a), ***but not including claims of indirect infringement under 35 U.S.C. § 271(b) or (c)***, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure on or before July 8, 2014.

D.I. 14 at 1 (second emphasis added).   The Court entered this stipulation as an order on June 27, 2014.

In direct violation of this order, the Amended Complaint includes a claim for inducement of infringement under 35 U.S.C. § 271(b), alleging that "Cisco is liable for infringement of the '848 patent pursuant to 35 U.S.C. § 271 (a) ***and (b)***."   D.I. 15 ¶ 46 (emphasis added).[4]   Cisco does not agree that Plaintiffs' allegations regarding the '848 patent are sufficient to establish the

---

[4]     Moreover, at the time Spherix stipulated that it would not amend to assert indirect infringement, it had access to the same information it now contends support those allegations.   Spherix has no basis for violating the stipulation and the Court's Order and allowing Spherix to do so encourages impermissibly casual stipulation and undermines the Court's Orders.

knowledge and intent required to establish a claim against Cisco for induced infringement.  In any event, because Plaintiffs' amended pleading violates this Court's order on the parties' stipulation, Plaintiffs' induced infringement claim as to the '848 patent should also be dismissed.

## **CONCLUSION**

For the reasons stated above, this Court should dismiss (i) Plaintiffs' willful infringement claims with respect to the Willfulness Patents-In-Suit; and (ii) Plaintiffs' induced infringement claim with respect to the '848 patent, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

August 5, 2014

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 5, 2014, upon the following in the manner indicated:

Damien Nicholas Tancredi, Esquire                    *VIA ELECTRONIC MAIL*
COZEN O'CONNOR
1201 North Market Street, Suite 1001
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Kerry B. McTigue, Esquire                             *VIA ELECTRONIC MAIL*
Barry Golob, Esquire
Donald R. McPhail, Esquire
COZON O'CONNOR
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, DC 20006
*Attorneys for Plaintiffs*

                                        */s/ Jack B. Blumenfeld*
                                        Jack B. Blumenfeld (#1014)