# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPHERIX INCORPORATED and NNPT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>CISCO SYSTEMS, INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§  Civil Action No. 14-393 (SLR)<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS FIRST AMENDED COMPLAINT**

Dated: August 26, 2014

By: */s/ Damien Nicholas Tancredi*
Damien Nicholas Tancredi (DE No. 5395)
**COZEN O'CONNOR**
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2000
Fax: (302) 295-2013
Email: dtancredi@cozen.com

Kerry B. McTigue
Barry P. Golob
Donald R. McPhail
**COZEN O'CONNOR**
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, D.C. 20006
Tel: (202) 912-4800
Email: kmctigue@cozen.com
Email: bgolob@cozen.com
Email: dmcphail@cozen.com

*Attorneys for Plaintiffs Spherix Incorporated and NNPT, LLC*

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | **Nature and Stage of the Proceedings** | 1 |
| II. | **Summary of the Argument** | 1 |
| III. | **Statement of the Facts** | 2 |
| IV. | **Argument** | 3 |
| V. | **Conclusion** | 9 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ascroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007)...........................................................................................................4

*Eon Corp v. FLO TV*,
  802 F. Supp. 2d 527 (D. Del. 2011)...........................................................................................8

*Fairchild Semiconductor Corporation v. Power Integrations, Inc.*,
  935 F. Supp. 2d 772 (D. Del. 2013).......................................................................................4, 6

*Gammino v. AT&T*,
  Civ. No. 12-666, 2013 U.S. Dist. LEXIS 166321 (D. Del., Nov. 22, 2013) ..........................4, 6

*LG Display v. AU Optronics*,
  722 F. Supp. 2d 466 (D. Del. 2010).......................................................................................7, 8

*MobilMedia Ideas LLC v. HTC Corp.*,
  Civ. No. 2:10-cv-112, 2011 U.S. Dist. LEXIS 104892 at *2 (E.D. Tex. Sep.
  15, 2011) ....................................................................................................................................4

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
  852 F. Supp. 2d 470 (D. Del. 2012)...........................................................................................5

*S.O.I.T.E.C. Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*,
  Civ. No. 08-292, 2009 U.S. Dist. LEXIS 13155 at *2 (D. Del. Feb. 20, 2009) ....................5, 6

*In re Seagate Tech., LLC*,
  497 F.3d 1360, 1371 (Fed. Cir. 2007).......................................................................................4

*SoftView LLC v. Apple Inc.*,
  Civ. No. 10-389, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012) ...............................8

*Walker Digital, LLC v. Facebook, Inc.*,
  852 F. Supp. 2d 559 (D. Del. 2012).......................................................................................4, 6

**Statutes**

35 U.S.C. § 271 (b) .........................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 3

Fed. R. Civ. Proc. 12(b) ........................................................................................................... 4

## I.   NATURE AND STAGE OF THE PROCEEDINGS

On March 28, 2014, Plaintiff Spherix Incorporated ("Spherix") filed its Complaint against Defendants Cisco Systems, Inc. ("Cisco"), seeking relief for Cisco's willful infringement of eleven U.S. patents (the "Asserted Patents"). D.I. 1. On June 9, 2014, Cisco moved to dismiss a subset of the claims within Spherix's complaint. D.I. 11. On June 24, Spherix and Cisco stipulated that Cisco would withdraw its motion to dismiss the original complaint if Spherix made certain amendments to its complaint. D.I. 14. On June 1, 2014, Spherix assigned its rights in four of the Asserted Patents to its wholly-owned subsidiary, NNPT, LLC ("NNPT"). On July 8, 2014, Spherix and NNPT ("Plaintiffs") filed their First Amended Complaint for Patent Infringement ("Plaintiffs Amended Complaint"). D.I. 15. On August 5, 2014, Cisco filed the current Motion to Dismiss Plaintiffs' Amended Complaint again moving to dismiss a subset of the claims. D.I. 18.

## II.   SUMMARY OF THE ARGUMENT

1.   Cisco's Motion to Dismiss should be denied because Plaintiffs Amended Complaint pleads facts plausibly showing that Cisco had the requisite pre-suit knowledge of each Asserted Patent to support Plaintiffs' willful infringement claims.[1] As explained in Plaintiffs Amended Complaint, Cisco became aware of certain of the Asserted Patents, and their relevance to Cisco's products, by virtue of those patents having been applied as prior art against the pending claims of various patent applications owned by Cisco. With respect to the remaining Asserted Patents, Cisco bid hundreds of millions of dollars for a portfolio containing the

---

[1] Regarding the issue of Spherix's indirect infringement claims in purported violation of the parties' stipulation, Spherix notes that the sole reference to 35 U.S.C. § 271 (b) was a clerical error. D.I. 15 at ¶ 46. Nevertheless, the stipulation stated that "[n]othing contained herein or in the Amended Complaint shall constitute a waiver of or limit the ability of Spherix . . . to, at any point subsequent to filing the Amended Complaint, seek the Court's leave or Cisco's consent to further amend its Amended Complaint" to plead indirect infringement. D.I. 14. Spherix continues to reserve its right to further amend its complaint in this regard in accordance with the applicable rules.

Asserted Patents in 2011. It is reasonable to infer that Cisco knew of the relevance of those remaining Asserted Patents to Cisco's products prior to bidding on those Patents.

2. Cisco seeks to heighten the pleading standard for willful infringement by conflating the amount of evidence required at the pleading stage with that required after the close of discovery. Cisco's citation to post-trial case law is irrelevant to the current situation because Plaintiffs have not yet had the opportunity even to take discovery, much less conduct a full trial.

3. Plaintiffs' factual allegations regarding Cisco's knowledge are more than sufficient at this early stage of the litigation. Cisco argues that Plaintiffs must specifically state that Cisco "analyzed" each patent and "attempted to assess whether [each] patent [applied] to its products." In fact, Plaintiffs Amended Complaint *does* allege that Cisco was aware of each Asserted Patent and its relevance to Cisco's products and that Cisco knew or should have known that it was infringing each such patent. Cisco can point to no authority that Plaintiffs must use the precise language offered by Cisco, or that Plaintiffs' allegations are otherwise insufficient to support their willfulness claims.

### III. STATEMENT OF THE FACTS

In its Amended Complaint, Plaintiffs Spherix and NNPT alleged that Cisco had sufficient pre-suit knowledge of each of the Asserted Patents. D.I. 15 at ¶ 33.[2] Plaintiffs further alleged that Cisco knew that each of the Asserted Patents was relevant to one or more of Cisco's products and that Cisco knew (or at least should have known) that its products infringed the Asserted Patents.

With respect to certain of the Asserted Patents, Plaintiffs alleged that Cisco knew of those patents, and their relevance to Cisco's products, by virtue of them having been cited during

---

[2] *See also* ¶¶ 38, 43, 48, 55, 60, 65, 70, 75, 80, 85. Plaintiffs made the same relevant allegations for each Asserted Patent. For simplicity's sake, Plaintiffs will hereafter cite to only the first example for each knowledge-related fact.

2

prosecution of Cisco's own patent applications at the U.S. Patent & Trademark Office. *Id.* at ¶¶ 38, 43 and 48.

With respect to the remaining Asserted Patents, Plaintiffs alleged that Cisco became aware of those patents, and their relevance to Cisco's products, by virtue of Cisco's participation in the 2011 Nortel patent auction, during which the Asserted Patents, *inter alia*, were sold for $4.5 billion. *Id.* at ¶ 17. Plaintiffs alleged that Cisco actively bid on all of the Asserted Patents, although Cisco was ultimately unsuccessful in its attempt to purchase the portfolio. *Id.*

Finally, Plaintiffs alleged that Cisco knew or should have known that there was "an objectively high likelihood that Cisco's actions constituted infringement of a valid patent." *E.g., id.* at ¶ 34.

Cisco's current motion seeks to dismiss Plaintiffs' willful infringement claims for eight of the Asserted Patents on the grounds that Plaintiffs have not met the pleading standard required by Fed. R. Civ. P. 8(a)(2). D.I. 18 at 7. Specifically, Cisco argues that the fact that Cisco bid on the Asserted Patents is insufficient to show that Cisco had sufficient knowledge of these patents. *Id.* at 9. In this opposition, however, Plaintiffs show that, pursuant to controlling case law, Plaintiffs Amended Complaint states a valid claim for willful infringement, and thus Cisco's motion should be denied.

IV. <u>**ARGUMENT**</u>

    A. <u>**Taking All Facts and Inferences In Plaintiffs' Favor, Plaintiffs Amended Complaint Has Sufficiently Pled Willful Infringement.**</u>

For each Asserted Patent, Plaintiffs' Amended Complaint alleges: (a) Cisco had pre-suit knowledge of the patent and of Cisco's infringement of the patent; (b) Cisco acted despite an objectively high likelihood that its actions constituted infringement; and (c) sufficient facts to reasonably infer that Cisco had the requisite knowledge for willful infringement. Plaintiffs have

3

therefore successfully and properly stated a claim for willful infringement of the Asserted Patents under the applicable standards.

It is well-settled that when reviewing a motion to dismiss for failure to state a claim, this Court "must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor." *See*, *e.g., Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 562 (D. Del. 2012). Although a complaint "requires more than labels and conclusions," it "does not need detailed factual allegations" to withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b). *Id.* Rather, a well-pleaded complaint requires only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To ultimately prove willful infringement, the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Walker Digital*, 852 F. Supp. 2d at 567 (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)). While this may be a high standard to show at trial, the standard for *pleading* willful infringement "is not high." *Gammino v. AT&T*, Civ. No. 12-666, 2013 U.S. Dist. LEXIS 166321 at *11-12 (D. Del., Nov. 22, 2013) (quoting *MobilMedia Ideas LLC v. HTC Corp.*, Civ. No. 2:10-cv-112, 2011 U.S. Dist. LEXIS 104892 at *2 (E.D. Tex. Sep. 15, 2011)).

To sufficiently plead a willful infringement claim, a plaintiff need only provide "a pleading equivalent to 'with a knowledge of the patent and of [the] infringement.'" *See Gammino*, 2013 U.S. Dist. LEXIS 166321 at *11. Moreover, knowledge may be averred generally. *See id* at *12; *see also Fairchild Semiconductor Corporation v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778-79 (D. Del. 2013) (citing Fed. R. Civ. Proc. 9)). Indeed, this

4

Court does not "require more detail with respect to [a] plaintiff's willful infringement claims than is required by Form 18." *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 477 (D. Del. 2012) (quoting *S.O.I.T.E.C. Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, Civ. No. 08-292, 2009 U.S. Dist. LEXIS 13155 at *2 (D. Del. Feb. 20, 2009)).

Plaintiffs have pled more than enough facts regarding Cisco's knowledge of the Asserted Patents, of their relevance to Cisco's products and of Cisco's likely infringement thereof. In particular, Plaintiffs Amended Complaint alleges that Cisco had knowledge of certain of the Asserted Patents, and their relevance to Cisco's products, because those patents had been cited during prosecution of Cisco's own patent applications relating to its own products. E.g. ¶¶ 34, 43 and 48. Plaintiffs Amended Complaint further alleges that for each remaining Asserted Patent, Cisco "had knowledge of [that] patent since at least" the 2011 Nortel patent auction, as well as knowledge of the patent's "relevance to Cisco's products and services, including Cisco's infringement [of the patent]." *E.g.,* D.I. 15 at ¶ 33. As set forth in Plaintiffs Amended Complaint, this knowledge can be inferred from the fact that Cisco actively participated in the Nortel auction and specifically "bid on the Asserted Patents." *Id.* at ¶ 17.

Finally, Plaintiffs Amended Complaint alleges that Cisco continued to make, sell and offer for sale its products with knowledge of the Asserted Patents and their relevance to Cisco's products despite "an objectively high likelihood that Cisco's actions constituted infringement of a valid patent." *E.g., id.* at ¶¶ 34, 43 and 48.

Assuming Plaintiffs' factual allegations are true, as this Court must do for the purposes of deciding Cisco's Motion to Dismiss, Plaintiffs Amended Complaint sets forth sufficient facts to support a willful infringement claim.

More specifically, as explained in Plaintiffs Amended Complaint, the Nortel patent portfolio sold "for an unprecedented and widely-publicized $4.5 billion," about $750,000 per

5

patent, to a "consortium of leading technology companies." *Id.* It is not only plausible, but extremely likely that prior to bidding hundreds of millions – if not billions – of dollars on the Nortel portfolio, a sophisticated company like Cisco would have at least reviewed the claims of the patents it sought to acquire. Indeed, it lacks all credibility for Cisco to suggest otherwise. And it is <u>highly likely</u> that Cisco would have analyzed those patents that contained claims that were "relevan[t] to Cisco's products and services," and were therefore likely infringed by Cisco, prior to bidding on such patents. Plaintiffs' factual allegations, taken as true, are therefore sufficient to plead that Cisco committed willful infringement.

      **B.**     <u>**Cisco's Attempt to Conflate The Pleading Requirement for Willful Infringement With The Proof Necessary for Trial is Misguided.**</u>

Notwithstanding the fact that all allegations in the Amended Complaint must be taken true and that all reasonable inferences are to be drawn in Plaintiffs' favor, Cisco does not even deny Plaintiffs' allegations of Cisco's pre-suit knowledge of the Asserted Patents or the supporting facts set forth by Plaintiffs.

This Court has repeatedly refused to dismiss willfulness claims that included far fewer facts regarding the defendant's pre-suit knowledge than are present in Plaintiffs' Amended Complaint. *See, e.g., Fairchild*, 935 F. Supp. 2d at 778-79 (holding that a boilerplate allegation of patent knowledge sufficient to state a willfulness claim where the opposing party did not dispute such knowledge); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 567-68 (D. Del. 2012) (denying motion to dismiss where complaint alleged pre-suit knowledge based on defendant's "interactions with representatives of [plaintiff]").

Rather than address the facts directly, Cisco bases its arguments on inapplicable case law and argues for a much higher pleading standard than this Court has previously required. *See, e.g., Gammino*, 2013 U.S. Dist. LEXIS 166321 at *11 (holding that "willful infringement is not subject to a heightened pleading standard").

6

For example, Cisco argues that Plaintiffs did not sufficiently allege Cisco's pre-suit knowledge of the Asserted Patents because Plaintiffs did not specifically state that Cisco "identified, reviewed, or analyzed" the Asserted Patents or that Cisco "attempted to assess whether the [Asserted Patents] had any application to Cisco's products." Motion to Dismiss at 10. Cisco, however, can point to no precedent for the proposition that Plaintiffs' complaint must include the specific language advocated by Cisco. Indeed, Plaintiffs' allegations that Cisco knew of some of the Asserted Patents from the prosecution of its own patent applications and tried to purchase the remainder of the Asserted Patents at an auction should be sufficient for this Court to infer that Cisco had the requisite knowledge of all of the Asserted Patents and their relevance to Cisco's products to support Plaintiffs' willful infringement claims.

Furthermore, Cisco has not cited any appropriate case law to support its argument that Plaintiffs' factual averments are insufficient to support their willfulness claims.

For instance, Cisco cites to *LG Display v. AU Optronics*, 722 F. Supp. 2d 466 (D. Del. 2010), for the proposition that participation in a patent portfolio auction is insufficient to establish willfulness. Motion to Dismiss at 11. Cisco, however, ignores the fact that *LG Display* <u>did not involve a motion to dismiss.</u> Rather, in that case, even after the completion of discovery and a full trial, "the evidence [was still] unclear as to the extent" of the infringer's participation in the auction. *Id.* at 471. Further, the Court held that willfulness was not proven because the infringer "maintained plausible and credible defenses to infringement and plausible and credible arguments concerning invalidity." *Id.*

*LG Display* therefore cannot be said to stand for the broad ruling that participation in a patent auction is not enough to establish willfulness. To the contrary, the *LG Display* opinion makes it clear that an infringer's participation in a patent auction involving the asserted patents can indeed show pre-suit knowledge of those patents, as long as the evidence presented at trial

7

establishes the extent of the infringer's involvement in the auction. Accordingly, *LG Display* actually weighs against Cisco's arguments, not in favor of them.

Cisco also cites to *Eon Corp v. FLO TV*, 802 F. Supp. 2d 527 (D. Del. 2011), but this case held only that pre-suit knowledge is not proven where the defendants entered into licensing agreements for unrelated patents, <u>which listed the asserted patent as one of numerous examples of prior art</u>. *Id.* at 532. Here, Plaintiffs allege that Cisco actually tried to buy the Asserted Patents *themselves*, not that Cisco bid on other patents that cited one or more of the Asserted Patents as prior art. While it may not be reasonable to infer that a company will review all 98 patents cited in the prior art of a licensed patent, it is not only reasonable, but, indeed probable, that a sophisticated company like Cisco would review the patents that it suspects may be relevant to its business before submitting a bid on those very patents.[3] The facts of *Eon Corp.* simply do not apply here.

Cisco's reliance on *SoftView LLC v. Apple Inc.*, Civ. No. 10-389, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012), is even less appropriate. The *SoftView* Court held that an allegation of media reports, which mentioned an unrelated trial involving the asserted patent, is insufficient to establish pre-suit knowledge. *Id.* at *18-19. The *SoftView* complaint did not generally allege the defendants' participation in a patent auction, let alone did it allege that the defendants specifically bid on the patent-in-suit. The facts of *SoftView* have very little, if anything, in common with this case.

Here, Plaintiffs have alleged that Cisco knew of certain of the Asserted Patents and the relevance thereof from the prosecution of their own patent applications and that Cisco knew of the remaining Asserted Patents and the relevance thereof from Cisco's attempt to purchase those

---

[3] Cisco also misconstrues Plaintiffs Amended Complaint, which alleges that Cisco knew of and bid on the Asserted Patents, not that Cisco necessarily knew of and bid on all of the patents in the Nortel auction. Thus, for this additional reason, Cisco's attempt to liken its bidding of millions if not billions of dollars on the Asserted Patents to merely receiving a list of 6,000 patents falls flat.

8

patents in the Nortel patent auction. Plaintiffs have also alleged that Cisco had knowledge of its likely infringement of the Asserted Patents. Assuming these factual allegations to be true, as this Court must, it is certainly plausible, if not likely, that Cisco acted despite its knowledge that there was an objectively high likelihood that its actions constitute infringement.

For at least these reasons, the Court should reject Cisco's Motion to Dismiss the willfulness claims in Plaintiffs Amended Complaint.

## V.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to deny Cisco's Motion to Dismiss the willful infringement claims in Plaintiffs Amended Complaint.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this 26th day of August, 2014

*/s/ Damien N. Tancredi*
Damien N. Tancredi (DE No. 5395)