**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPHERIX INCORPORATED and<br>NNPT, LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>CISCO SYSTEMS, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)  C.A. No. 14-393 (SLR)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Jack B. Blumenfeld (#1014)<br>1201 North Market Street<br>P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com |
| Steven Cherny<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800 | *Attorneys for Defendant Cisco Systems, Inc.* |
| Adam Alper<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, CA 94104<br>(415) 439-1400 |  |
| Michael W. De Vries<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street<br>Los Angeles, CA 90071<br>(213) 680-8400 |  |
| September 5, 2014 |  |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

    I.      Plaintiffs' Amended Complaint Fails To Allege Sufficient Facts Supporting Willful Infringement Claims For The Willfulness Patents-In-Suit..........................1

    II.     Plaintiffs Ignore The Fact That The '323 Patent Did Not Even Exist At The Time Of The Auction. ....................................................................................................8

    III.    Plaintiffs' Claim For Indirect Infringement Of The '848 Patent Should Be Dismissed. ...........................................................................................................8

CONCLUSION.....................................................................................................................9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 2, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 2, 3

*Eon Corp. IP Holdings LLC v. FLO TV Inc.*,
  802 F. Supp. 2d 527 (D. Del. 2011) ................................................................................ 4

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  935 F. Supp. 2d 772 (D. Del. 2013) ................................................................................ 3

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ....................................................................................... 7

*Intellectual Ventures I LLC v. Toshiba Corp.*,
  Civ. No. 13-453-SLR (D. Del. Sept. 3, 2014) ............................................................. 5, 6

*Johnson v. Delaware/Department of Labor*,
  C.A. No. 12-653-GMS, 2014 WL 3828439 (D. Del. Aug. 1, 2014) ...................... 2, 3, 7

*LG Display Co., Ltd. v. AU Optronics Corp.*,
  722 F. Supp. 2d 466 (D. Del. 2010) ................................................................................ 5

*Mallinckrodt Inc. v. E-Z-EM Inc.*,
  671 F. Supp. 2d 563 (D. Del. 2009) ................................................................................ 2

*SoftView LLC v. Apple Inc.*,
  Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ............................. 4, 5

*State Indus., Inc. v. A.O. Smith Corp.*,
  751 F.2d 1226 (Fed. Cir. 1985) ....................................................................................... 8

*Walker Digital, LLC v. Facebook, Inc.*,
  852 F. Supp. 2d 559 (D. Del. 2012) ............................................................................ 2, 3

**Other Authorities**

35 U.S.C. § 271(b) ................................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 9

# INTRODUCTION

Plaintiffs contend that they should be able to proceed with claims that Cisco willfully infringed eight of the eleven patents asserted in this case based on a single alleged fact: that Cisco allegedly became aware of its alleged infringement of the eight Willfulness Patents-In-Suit—the RE467, '877, '125, '174, '763, '123, '998, and '323 patents—by virtue of participating in the bankruptcy auction involving Nortel's patent portfolio, which included more than 6,000 patents and applications.  This single fact does not lead to a plausible inference that Cisco willfully infringed these patents.  Plaintiffs allege no facts specifically directed to any of the Willfulness Patents-In-Suit—*one of which had not even issued at the time of the auction*—relying instead on a theory that it is plausible to suggest that Cisco had the knowledge necessary to willfully infringe each and every claim of every single patent included in Nortel's vast portfolio based solely on its general alleged participation in an auction involving those patents. Under Plaintiffs' theory, any industry participant who participates in—or even considers participating in—an auction or other acquisition of a patent portfolio would have the knowledge required to willfully infringe each and every patent asset in the portfolio, even if that portfolio contains hundreds or thousands of assets, and even if that portfolio includes patent applications whose claims are still in the process of being prosecuted and amended in the patent office.  The controlling law does not support Plaintiffs' theory or such a result.  Plaintiffs' claims of willful infringement of those eight patents should be dismissed.

# ARGUMENT

I. **PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS SUPPORTING WILLFUL INFRINGEMENT CLAIMS FOR THE WILLFULNESS PATENTS-IN-SUIT.**

For most of the patents-in-suit, Plaintiffs' Amended Complaint alleges that Cisco willfully infringed those patents only because they were included among 6,000 patents involved

in an auction in which Cisco allegedly participated.[1]  Plaintiffs do not cite to any other fact alleged in their Amended Complaint to support a claim of willful infringement of these patents, or to any case from this or any other court finding allegations like these sufficient to support a willful infringement claim.  *See* D.I. 20.  As demonstrated in Cisco's opening brief, established case law compels a conclusion that the Amended Complaint falls far short of what is required.

In general, a court "must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor" when ruling on a motion to dismiss, *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 562 (D. Del. 2012), but a court must reject "unsupported allegations," "bald assertions," "legal conclusions," and "unwarranted inferences." *Johnson v. Delaware/Department of Labor*, C.A. No. 12-653-GMS, 2014 WL 3828439, at *3 (D. Del. Aug. 1, 2014).  Moreover, even after accepting all well-pled factual allegations as true, the complaint must "'state a claim to relief that is **plausible on its face**.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).

Plaintiffs cite to only one *fact* in support of its claim that Cisco willfully infringed the eight Willfulness Patents-In-Suit: that those patents were included among 6,000 patents involved in an auction in which Cisco allegedly participated.  *See* D.I. 18 at 5-7.  Plaintiffs' remaining

---

[1]  Plaintiffs' response brief repeatedly states that, for three of the patents-in-suit, Cisco had pre-suit knowledge of the patents because they were cited during prosecution of Cisco patents. D.I. 20 at 1, 2-3, 5, 7, 8 ("As explained in Plaintiffs Amended Complaint, Cisco became aware of certain of the Asserted Patents, and their relevance to Cisco's products, by virtue of those patents having been applied as prior art against the pending claims of various patent applications owned by Cisco.").  Although Cisco does not agree these facts are sufficient to establish willful infringement, it does not seek to dismiss Plaintiffs' willful infringement claims with respect to those patents in view of *Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 569 (D. Del. 2009).  It appears that Plaintiffs focus on those allegations, which are not at issue in Cisco's motion, to obscure their insufficient basis for alleging willful infringement of the remaining patents.

2

allegations with respect to those patents are mere legal conclusions, unsupported by any facts. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *Johnson*, 2014 WL 3828439, at *3. Moreover, Plaintiffs allege no facts whatsoever regarding any of the Willfulness Patents-In-Suit in particular. Instead, Plaintiffs allege that Cisco knew it was infringing these patents based on their inclusion in the 6,000-patent Nortel portfolio. But the question on this motion is not whether Cisco had knowledge of Nortel's portfolio, but rather whether Cisco had sufficient knowledge of the specific eight Willfulness Patents-In-Suit. It is not plausible to suggest that Cisco's alleged involvement in an auction of more than 6,000 patents provided it with the requisite knowledge and intent to willfully infringe each and every one of those patents.

Plaintiffs rely on only two cases to support their position—cases denying motions to dismiss willfulness claims which Plaintiffs incorrectly contend included "far fewer facts regarding defendant's pre-suit knowledge" than this case. D.I. 20 at 6. A review of these cases, however, demonstrates their inapplicability to the facts at issue in this case. First, in *Fairchild*, it was not disputed that the counterclaim-defendant had knowledge of the asserted patent; thus, the court did not have to analyze the sufficiency of the allegations. *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 779 (D. Del. 2013). Second, in *Walker Digital*, the plaintiff's allegations of knowledge were based on a meeting between the plaintiff and the defendant in which the parties had specifically discussed the patent-in-suit and how the defendant allegedly infringed the patent-in-suit. *Walker Digital*, 852 F. Supp. 2d at 563-64. Again, there was no need for the court to determine whether an inference of knowledge of the patent-in-suit was plausible: the complaint alleged a specific meeting in which infringement of the patent-in-suit was specifically discussed. Plaintiffs' Amended Complaint contains no such

3

allegations, and neither of these cases supports Plaintiffs' position that inclusion of the patents in a group of thousands of other patents is sufficient to sustain a claim of willful infringement.

In contrast to the cases relied on by Plaintiffs, Cisco's cases—*Eon Corp.* and *SoftView*—confirm that it is not plausible to conclude that Cisco had the knowledge sufficient for a claim of willful infringement based solely on inclusion of the patents among the 6,000 patents involved in the Nortel patent auction. Plaintiffs argue that *Eon Corp.* addressed an allegation of knowledge based on a lengthy list of prior art patents rather than a lengthy list of patents involved in an auction. D.I. 20 at 8. But the legal principle set forth in that case—that inclusion of a patent in a lengthy list of patents does not impart knowledge of the patent-in-suit—is equally applicable here. In *Eon Corp.*, defendants knew of two patents due to a license, and plaintiff sought an inference that defendants therefore knew of the patent-in-suit because it was listed as prior art in the two licensed patents—1 of 14 prior art references in one licensed patent, and 1 of 98 references in the other. *Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 532-33 (D. Del. 2011). Similarly, here, Plaintiffs allege that Cisco knew generally of the 6,000-patent Nortel portfolio, and by virtue of that general knowledge, allegedly knew of the specific Willfulness Patents-In-Suit. Just as it was implausible to conclude in *Eon* that the defendants knew of the patent-in-suit by virtue of its inclusion in a much shorter list of patents than is at issue in this case, the allegations here do not plausibly support a conclusion that Cisco knew about and intended to infringe the Willfulness Patents-In-Suit. *See id.* at 533.

With respect to *SoftView*, Plaintiffs' position again is simply that the facts here are different. D.I. 20 at 8. Cisco agrees the facts are not the same. The reasoning in *SoftView*, however, is nevertheless highly relevant and instructive here. In *SoftView*, the patent holder alleged that the accused infringer knew of the patent-in-suit because of media reports discussing

4

that patent. Specifically, the plaintiff alleged that Kyocera, which had been added to the case as a defendant, had gained knowledge of the patent-in-suit due to numerous media reports surrounding the original litigation filed against Apple and AT&T. *SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012). But the Court found that these allegations were not sufficient to sustain a claim of willful infringement, holding that it was implausible to conclude that Kyocera would have been aware of particular media reports given the "sheer number and frequency" of patent lawsuits:

> The mere fact that SoftView's lawsuit against Apple and AT & T was reported in certain media outlets does not, by itself, plausibly suggest that Kyocera would have been aware of those particular media reports, ***particularly given the sheer number and frequency*** of patent lawsuits asserted against smartphone manufacturers.

*Id.* (emphasis added). Here, the fact that Cisco allegedly participated in the auction of the Nortel patent portfolio as a whole does not plausibly suggest that Cisco was aware of the specific Willfulness Patents-In-Suit and its alleged infringement of those patents, particularly given the "sheer number" of patents in the Nortel patent portfolio. *See id.*[2]

This Court's recent decision in *Intellectual Ventures v. Toshiba Corp.*, which issued after the filing of the present motion to dismiss, further confirms that Plaintiffs' willfulness allegations are deficient. In that case, plaintiffs alleged that defendants' infringement was willful based on "discussions with and presentations from" plaintiffs. *Intellectual Ventures I LLC v. Toshiba Corp.*, Civ. No. 13-453-SLR, slip op. at 7 (D. Del. Sept. 3, 2014) (attached as Exhibit A). The

---

[2] Plaintiffs also criticize Cisco for citing *LG Display v. AU Optronics*, stating that Cisco "ignores the fact that *LG Display* did not involve a motion to dismiss." D.I. 20 at 7. But Cisco expressly acknowledged that *LG Display* involved a bench trial. D.I. 18 at 11 ("[T]he court concluded after a bench trial that the alleged infringer's participation in a patent portfolio auction containing the patents-in-suit was insufficient to establish willfulness."). Despite the difference in procedural posture, this case demonstrates that participation in a patent auction, without more, is insufficient to establish willfulness. *See LG Display Co., Ltd. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 470-71 (D. Del. 2010).

Court granted defendants' motion to dismiss the willfulness claims, holding that where "it is a matter of public knowledge that plaintiffs own hundreds of patents, a general allegation about 'discussions' or 'a presentation' is insufficient to withstand a motion to dismiss." *Id.* at 8. In this case, Plaintiffs' willfulness allegations are even more deficient. Here, the universe of patents is much larger—6,000 patents rather than the merely "hundreds of patents" in *Intellectual Ventures*. Further, the complaint in *Intellectual Ventures* included allegations referencing "discussions" and "a presentation," whereas here the only allegation by Plaintiffs is the general knowledge of Nortel's patent portfolio as a whole. In view of *Intellectual Ventures*, Plaintiffs' allegations are insufficient to plead willful infringement of the Willfulness Patents-In-Suit. *See id.*

In an effort to support its claim that Cisco willfully infringed eight of the eleven patents, Plaintiffs suggest that Cisco would have reviewed each and every patent in the vast Nortel patent portfolio before allegedly bidding on that portfolio because Cisco "suspects [the patents] may be relevant to its business." D.I. 20 at 8. There are countless reasons why Cisco might bid on a patent portfolio but not review every patent in that portfolio. For example, particularly given the vast size of the Nortel patent portfolio, there may well have been patents other than the Willfulness Patents-In-Suit that Cisco was interested in; or Cisco may have been interested in acquiring the Nortel patent portfolio for reasons unrelated to the relationship of any patent to its own products; or Cisco may have been interested in developing technology entirely unrelated to the Willfulness Patents-In-Suit. Plaintiffs' Amended Complaint does not allege *any* facts making it plausible to suggest that any of the Willfulness Patents-In-Suit *in particular*—as opposed to any of the thousands of other patents in the portfolio—was specifically reviewed or

6

considered by Cisco, or that Cisco could be deemed a "willful infringer" of every patent in the portfolio. *See Johnson*, 2014 WL 3828439, at *3.[3]

Plaintiffs nevertheless insist that "[i]t is not only plausible, but extremely likely that prior to bidding hundreds of millions – if not billions – of dollars on the Nortel portfolio, a sophisticated company like Cisco would have at least reviewed the claims of the patents it sought to acquire." D.I. 20 at 6. But Plaintiffs have not alleged any specific facts suggesting that Cisco reviewed the Willfulness Patents-In-Suit, or any facts supporting such an implausible inference. Indeed, the sheer volume of patents and analysis suggested by Plaintiffs makes this assertion implausible. In an attempt to excuse its implausible allegations, Plaintiffs suggests that the Amended Complaint alleges that Cisco bid on only the Asserted Patents—including the Willfulness Patents-In-Suit—rather than the entire Nortel patent portfolio. D.I. 20 at 8 n.3. But, as Plaintiffs admit throughout their Amended Complaint and responsive brief, the Nortel patent auction was an auction for Nortel's entire portfolio of patents, not just the Asserted Patents:

> During bankruptcy proceedings many years later, **Nortel sold the Asserted Patents, among others**, to a consortium of technology companies known as Rockstar Bidco, L.P. D.I. 15 ¶ 8 (emphasis added).
>
> With respect to the remaining Asserted Patents, **Cisco bid hundreds of millions of dollars for a portfolio containing the Asserted Patents** in 2011. D.I. 20 at 1-2 (emphasis added).
>
> With respect to the remaining Asserted Patents, Plaintiffs alleged that Cisco became aware of those patents, and their relevance to Cisco's products, by virtue of **Cisco's participation in the 2011 Nortel patent auction, during which the Asserted Patents, inter alia, were sold** for $4.5 billion. D.I. 20 at 3 (emphasis added).

---

[3] Even if one were to assume that Cisco instantly became aware of the contents of all 6,000 patents in the Nortel portfolio, it defies logic that Cisco would also necessarily instantly become aware that it was "act[ing] despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Despite the current trend of some entities, willful infringement may not be pled as of right.

7

> [T]he *Nortel patent portfolio* sold "for an unprecedented and widely-publicized $4.5 billion," about $750,000 per patent. D.I. 20 at 5-6 (emphasis added).[4]

Plaintiffs' allegations that Cisco participated in an auction of the Nortel patent portfolio does not give rise to a plausible inference that Cisco had the knowledge and intent necessary to willfully infringe the Willfulness Patents-In-Suit.

## II. PLAINTIFFS IGNORE THE FACT THAT THE '323 PATENT DID NOT EVEN EXIST AT THE TIME OF THE AUCTION.

The implausible nature of Plaintiffs' willful infringement claims is confirmed by Plaintiffs' failure even to address Cisco's argument that the '323 patent did not even exist at the time of the auction. As longstanding Federal Circuit precedent establishes, however, "[t]o willfully infringe *a patent*, **the patent must exist** and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (second emphasis added). Plaintiffs allege that Cisco gained knowledge of the '323 patent in connection with an auction that occurred more than two years before the '323 patent even issued. D.I. 18 at 12-14. There can be no claim for willful infringement of a patent that did not exist and that Cisco could not have known about.

## III. PLAINTIFFS' CLAIM FOR INDIRECT INFRINGEMENT OF THE '848 PATENT SHOULD BE DISMISSED.

Plaintiffs do not contest that their allegation of indirect infringement violated the stipulated order, but they insist that their violation of the stipulation was an innocent mistake— "that the sole reference to 35 U.S.C. § 271 (b) was a clerical error." D.I. 20 at 1 n.1. The Amended Complaint expressly references section 271(b) twice, not once, *see* D.I. 15 ¶¶ 4, 46, and in conjunction with Plaintiffs' allegedly "mistaken" reference to section 271(b), Plaintiffs

---

[4] This mathematical calculation performed by Plaintiffs is based on a sale of 6,000 patents—the entire Nortel patent portfolio.

8

allege that "[t]he infringing acts also include knowingly aiding and abetting Cisco's customers" and that Cisco "actively encourage[es]" use of Cisco's products in an allegedly infringing manner, clearly attempting to meet the requirements of induced infringement. D.I. 15 ¶ 46.

In order to enforce the parties' stipulation and the Court's order on that stipulation, Plaintiffs' claim against Cisco for induced infringement of the '848 patent should be dismissed. Given Plaintiffs' position that this claim was included in error, the parties appear to agree that dismissal is appropriate.

## CONCLUSION

For the reasons stated in Cisco's opening brief and herein, this Court should dismiss (i) Plaintiffs' willful infringement claims with respect to the Willfulness Patents-In-Suit; and (ii) Plaintiffs' induced infringement claim with respect to the '848 patent, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Jack B. Blumenfeld* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com |
| Steven Cherny<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800 | |
| | *Attorneys for Defendant Cisco Systems, Inc.* |
| Adam Alper<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, CA 94104<br>(415) 439-1400 | |
| Michael W. De Vries<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street<br>Los Angeles, CA 90071<br>(213) 680-8400 | |
| September 5, 2014 | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 5, 2014, upon the following in the manner indicated:

| | |
|---|---|
| Damien Nicholas Tancredi, Esquire<br>COZEN O'CONNOR<br>1201 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Kerry B. McTigue, Esquire<br>Barry Golob, Esquire<br>Donald R. McPhail, Esquire<br>COZON O'CONNOR<br>The Army and Navy Building<br>1627 I Street, NW, Suite 1100<br>Washington, DC 20006<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)